at Chicago. The master, on his arrival here, reported to Gelpecke, the consignee, who referred him to Haskin, who had bought from Gelpcke a large quantity of salt, to be delivered. Haskin, accordingly, received the cargo in place of Gelpcke, which was discharged after an unusual delay. Ingraham, the captain, and Egan, the agent of the Anderson, told Haskin that they would look to the salt for their claim for demurrage; but Haskin never agreed that he would receive the salt subject to this claim. The salt was delivered and freight paid, and, if there was a just claim for demurrage, why was not some understanding had between Haskin and the agent of the vessel, that the lien on the salt would be retained for the demurrage? If Egan, on delivery had insisted on this, and Haskin had assented to it, then the lien would exist. A mere intention, on the part of the agent of this vessel, that he would retain the lien, and saying so, does not constitute the lien. Egan could have refused to deliver the salt, if the vessel's claim for demurrage was right; but instead of that, he does deliver, on payment of freight only, and doubtless misled Haskin by leading him to believe that the vessel would look to Gelpcke, and, in fact, negotiation is afterwards had by Egan with Gelpcke, which, proving abortive, the salt was attached, and this libel filed. The delivery of the salt was unconditional. Haskin treated it as his own, without incumbrance and with no understanding that the lien should continue, and in fact sold part of this very lot now in controversy.

In the opinion of the court, the lien on the salt was waived when it was delivered to Haskin, who received it without consenting to hold it subject to the lien for demurrage. Judgment below is affirmed.

NOTE. Contra, see One Hundred and Fifty-One Tons of Coal [Case No. 10,520]. For an extended discussion of the doctrine of maritime liens, and numerous references to authorities, see 5 Am. Law Reg. (O. S.) 129; Ang. Carr. § 370 et seq.

WINSLOW (MARTIN v.). See Case No. 9,172.

## Case No. 17,882.

### WINSLOW v. MAXWELL.

[Cited in Bartels v. Redfield, 16 Fed. 339. Nowhere reported; opinion not now accessible.]

WINSLOW (MITCHELL v.). See Case No. 9,673.

WINSLOW (RAND v.). See Case No. 11,549.

WINSLOW (THATCHER v.). See Case No. 13,863.

WINSLOW (TROY IRON & NAIL FACTORY v.). See Case No. 14,199.

WINSLOW (UNITED STATES v.). See Cases Nos. 16,741 and 16,742.

WINSLOW, The R. G. See Case No. 11,736.

## Case No. 17,883.

### WINSO et al. v. The CORNELIUS GRINNELL.

[26 Law Reporter, 677.]

District Court, S. D. New York. June Term, 1864.

WHAT ARE SALVAGE SERVICES — COMPENSATION — DAMAGE TO SALVING VESSEL.

[1. Where a steamer found a sailing vessel anchored among the shoals off Cape May, in ignorance of her true position, and in considerable danger of being driven upon the banks in case her cables should part, and, after attempting, without success, to get a hawser from her, led the way safely out to sea, the sailing vessel proceeding, however, under her own sails, held, that this was a salvage service for which a liberal compensation should be awarded.]

[2. Where a steamer bound from Philadelphia to Boston was delayed several hours off Cape May by rendering a salvage service, and in consequence thereof arrived at Pollock Rip nearly at low water, and struck in going over, and received severe injuries, held, that the same were merely remote and consequential damages, which could not be recovered against the vessel to which the services had been rendered.]

[3. Five thousand dollars awarded to a steamer worth, with her cargo, $500,000, for piloting out to sea without any considerable danger to herself a sailing vessel worth $122,500, from a position of considerable peril among the shoals off Cape May.]

[This was a libel by Henry Winso and others, owners of the steamship Saxon, against the ship Cornelius Grinnell, to recover compensation for salvage services.]

SHIPMAN, District Judge. This is a libel for salvage, brought by the owners of the steamship Saxon against the sailing ship Cornelius Grinnell, for services rendered to the latter by the Saxon, near Five Fathom Bank, to the eastward of Cape May, on the 3d of April, 1863. Two questions are raised on the pleadings and proofs: (1) Whether the services rendered come within the rule of compensation applicable to salvage rewards; and (2) if so, what amount should be allowed.

The peculiar character of the case will be best presented by a somewhat detailed statement of the facts which appear proved by the evidence. The New York and London packet ship Cornelius Grinnell, of New York, valued for the purposes of this case at not less than $22,500, having on board a cargo of the value of at least $100,000, with a large number of passengers and a full crew, left London for New York on the 13th of March, 1863. On Saturday, the 2d of April, at about 10 o'clock a. m., she hove to in a severe gale of wind, her master supposing that he was off Fire Island, south of Long Island. The ship lay to till the next morning at 4 o'clock, her head being kept east southeast, the gale continuing severe. After 4 o'clock she was run in west southwest, as it was then supposed, towards New York. Between 12 and 1 o'clock she made land, which